

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-21-2003

# Anka Caran v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket 02-1964

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Anka Caran v. Atty Gen USA" (2003). *2003 Decisions.* Paper 871.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/871

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 02-1964

ANKA CARAN,
Petitioner

v.

John Ashcroft, Attorney General for the
United States of America,
Respondent

Petition for Review of the Decision of the
Board of Immigration Appeals
A74 991 862

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 17, 2002

Before: NYGAARD, ALITO and McKEE, Circuit Judges.
( Filed January 21, 2003

OPINION

McKEE, Circuit Judge.

The Immigration and Nationalization Service placed Anka Caran, an ethnic Romanian

born in Serbia, into deportation proceedings by filing an order to show cause charging her

under the former Section 241(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8

U.S.C. § 1251(a)(1)(B). The INS alleged that Caran stayed in the United States beyond the

time permitted by her non-immigrant visa. Caran's counsel conceded that she was

deportable as charged, but Caran sought relief in the form of asylum and withholding of

deportation under Sections 208 and 243(h) of the Immigration and Nationality Act ("INA"),

8 U.S.C. §§ 1158, 1253 (h).[1]  An immigration judge ("IJ") denied the requested relief and the Board of Immigration Appeals ("BIA") affirmed, essentially for the reasons set forth by the IJ. Caran then filed this petition for review.   For the reasons that follow, we will dismiss the petition.

## I.

INA § 208 gives the Attorney General discretion to grant asylum to a deportable alien.  8 U.S.C. § 1158(a).   However, that discretion can only be exercised if the applicant qualifies as a "refugee." *Id*.   The term "refugee" is defined by statute as:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside of any country in which such person last habitually resided, and who is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).    The asylum applicant must present some evidence of persecution "on account of" one of the five statutory grounds in order to establish eligibility for asylum. *INS v. Elias-Zacarias*, 502 U.S. 478 (1992).

The "well-found fear of persecution" standard involves both a subjectively genuine fear of persecution and an objectively reasonable possibility of persecution. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987).   The subjective prong requires a

---

[1]INA § 243(h) has been recodified in INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), under the sub-heading "restriction on removal."

showing that the fear is genuine. *Mitey v. INS*, 67 F.3d 1325, 1331 (7th Cir. 1995). In order to determination an objectively reasonable possibility of persecution, we must ascertain whether a reasonable person in the alien's circumstances would fear persecution if returned to the alien's native country. *Chang v. INS*, 119 F.3d 1055, 1065 (3d Cir. 1997).

Withholding of deportation is closely related to asylum. However, unlike the asylum provision, the withholding provision states that the "Attorney General *shall not* deport or return an alien. . . to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 243(h); 8 U.S.C. § 1253(h) (emphasis added). Accordingly, in order to succeed on an application for withholding of deportation, the alien must establish by a "clear probability" that his or her life or freedom would be threatened in the proposed country of deportation. *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir. 1991). "Clear probability" means that it is "more likely than not" that an alien would be subject to persecution. *INS v. Stevic*, 467 U.S. 407, 429-30 (1987). The "clear probability" standard is a more rigorous standard than the "well-founded fear" standard for asylum. *Janusiak*, 947 F.3d at 47. Thus, if an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation. *Id*.

**II.**

3

In her application, Caran stated that her son, Demian, completed his military service in the Yugoslavian Army in 1981. In 1991, when the civil war started in Yugoslavia, the Serbian Army purportedly tried to draft Demian. However, Caran stated that her son did not want to serve in the Serbian Army because of his conscientious objection to the civil war. Therefore, he went to a different city to live.

Consequently, Serbian Army officials came to her home to investigate her son's whereabouts. Caran claimed that she (and her late husband) feared being killed by the Serbian military, but did not explain the reasons for her fear or specifically relate it to her son's draft avoidance. She also claimed that her husband died on November 1993 because "the abuse took its toll." Finally, she said that she "escaped" Yugoslavia because it was the "only way for [her] to be sure [she] could be safe."

In her testimony at the hearing before the IJ, Caran, who previously admitted to having overstayed her visa, also admitted that she was working as a seamstress when arrested by the INS, and that she never claimed a fear of persecution until almost three years after she came to the United States and after she was placed in deportation proceedings. She did testify that her problems began when the Serbian authorities attempted to draft her son into the Serbian Army, and he evaded that draft. She testified that she and her husband were questioned by the Serbian authorities regarding the whereabouts of her son, but also said that the authorities did not enter her home. Rather, they spoke with her husband outside. She further testified that she and her husband never told the Serbian authorities where her son was, even though they came to her home five or six times.

4

Although she testified that her husband died on 1993 because he was "scared and shocked" by the authorities' visits, she did not testify about any confrontation or threats against herself or her husband. Nonetheless, she claimed that she was afraid to return home in case the authorities ever returned.

Caran claimed that she last saw her son in 1994. She did not provide any evidence that her son experienced any problems after evading conscription. When she was asked why she would not live with her son she answered only that "coming here is better than going and living with him there."

Although she alleged a fear of persecution, she left the United States and returned to her own home in Serbia in February of 1994 and remained there for eight months until she returned to the United States toward the end of 1994. She testified that during that time she was visited by representatives from the Serbian government, but said that they only inquired about her son. The authorities apparently did not threaten or harm her. Her nephew was allegedly taking care of her property in Serbia, and twelve to fifteen of her family members still lived in Serbia at the time of the hearing.

### III.

The IJ denied asylum essentially for two reasons. First, Caran was able to live in Serbia and even returned to Serbia for eight months after her initial visit to the United States without experiencing any problems. Second, Caran's son, who was the person the authorities were seeking, was able to remain in Serbia without experiencing any problems. In the IJ's view, these two factors cast doubt upon Caran's claim that she might be

5

persecuted upon returning to Serbia. The IJ also found no evidence that persons of Romanian descent are subject to persecution in today's Serbia. The IJ reasoned that a sovereign government does not engage in persecution when it drafts its citizens into the army and that it is not persecution for a government to investigate those suspected of violating its law. Therefore, the IJ denied asylum and withholding of deportation, but granted Caran the privilege of departing voluntarily in lieu of deportation.

As noted above, the BIA affirmed essentially for the reasons stated in the IJ's opinion.

## IV.

We must sustain the BIA's determination if there is substantial evidence in the record to support it. *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir.2001). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Senathirajah v. INS*, 157 F.3d 210, 216 (3d Cir.1998) (quotation omitted). Under this deferential standard, "the BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille*, 242 F.3d at 483-84 (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n. 1 (1992)). Because the BIA stated that it adopted the IJ's ruling for the reasons set forth therein, and did not provide an independent analysis of the facts, we review the decision of the IJ as if it were the decision of the BIA. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n. 2 (3d Cir.2001).

## V.

Caran argues that she is a member of a social group, i.e, a member of a draft evader's family, and that because her son's evasion of the draft constituted adherence to a political opinion, the Serbian authorities would impute that political opinion to her as well. However, although the IJ found Caran to be credible, substantial evidence in the record supports the finding that Caran has not established past persecution or a well-founded fear of future persecution within the meaning of the applicable provisions of the INA.

With regard to past persecution, Caran testified only to inquiries regarding the whereabouts of her son by army representatives. We understand that any caring parent may well have been concerned about the inquiries, but this record is devoid of any suggestion that she ever suffered any physical harm or even threats of harm. Therefore, she has not demonstrated past persecution.

We reach the same conclusion as to her attempt to establish a "well-founded fear of persecution." Serbia authorities did not harm Caran in any way prior to her departure from Serbian, and there is nothing in the record to support a finding that Caran will suffer persecution upon her return. In fact, her return to Serbia in 1994 and her ability to live there in her own home for eight months without encountering harm substantially undermines her claim of a well-founded fear of persecution. Moreover, the presence of Caran's family members in Serbia is inconsistent with her claim of a well-founded fear. Most notably, Caran's son, the actual subject of the Serbian authorities' inquiries, is still living in Serbia. Although she claims that he is in hiding, the record lacks evidence of official acts of the kind of revenge or retribution for his opposition to subscription that

7

could be considered "persecution." Rather, we only know that the Serbian authorities have made fruitless inquiries through Caran and her late husband over the years.

**VI.**

For all of the above reasons, the petition for review is denied.

———————————

TO THE CLERK OF THE COURT:

Please file the foregoing Opinion.

/s/ Theodore A. McKee
Circuit Judge